UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
UNITED LAUNCH ALLIANCE, LLC,                                 :
                                              Plaintiff,     :
                                                             :        24 Civ. 1582 (LGS)
                          -against-                          :
                                                             :        **<u>OPINION AND ORDER</u>**
FACTORY MUTUAL INSURANCE                                     :
COVERAGE, et al.,                                            :
                                            Defendants.      :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

    Plaintiff United Launch Alliance, LLC brought this action against a group of insurance

company Defendants, including Factory Mutual Insurance Coverage ("FM" or "Defendant"), for

breach of contract and declaratory relief.  Plaintiff has resolved its disputes with all Defendants

except FM.  Defendant refused to indemnify Plaintiff for losses it incurred as a result of an

aborted rocket launch.  Defendant claims two reasons for denying coverage: that the relevant

insurance policy section, Section Q, was not triggered because there was no covered loss, and that

the "design defect" exclusion bars coverage.  Plaintiff moves for judgment on the pleadings

regarding the applicability of these provisions.  For the reasons below, Plaintiff's motion is

denied.

## I.    BACKGROUND

    The following facts are taken from the pleadings and assumed to be true for purposes of

this motion.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).[1]

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and
citations are omitted, and all alterations are adopted.

Plaintiff is a launch services provider that manufactures and operates launch vehicles and launches satellites, spacecrafts and payloads into orbit.  Defendant is an insurance company that provided coverage to Plaintiff related to its launches, including a policy in effect from May 1, 2020, to May 1, 2021 (the "Policy").  The Policy contains additional coverage provisions, including Section Q, which describes the coverage of launch vehicles and related launch equipment.  This provision states:

> In the event that a launch is aborted or subject to a day of launch hold due to immediately impending insured physical loss or damage, this Policy shall pay the reasonable and necessary incremental costs associated with the launch abort or day of launch hold, including but not limited to de-stack processing, ground reprocessing, mission rescheduling, mission integration activities, manifest delays, refueling and associated contract penalties or incentives.

The Policy also contains certain exclusions to coverage, including a so-called "design defect" exclusion, which states: "This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured: 1) faulty workmanship, material, construction or design from any cause . . . . 3) deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect."

On September 30, 2020, Plaintiff attempted to launch a Delta IV Heavy launch vehicle from Cape Canaveral Space Force Station.  The process for a launch includes a countdown, and the launch team can call a manual launch hold up until T-10 seconds.  After T-10 seconds, the launch control equipment takes control and automatically aborts the launch if certain pre-programmed system safeguards are triggered.  During the launch attempt, a safeguard was triggered at T-7, and the launch was automatically aborted because a signal sensor indicated that a valve designed to divert hydrogen fumes was not in the correct position.  Had the signal been correct, the hydrogen gas would have ignited and caused a catastrophic failure.  A later investigation determined that the signal was incorrect and that the hydrogen gas would not have

ignited had the launch proceeded.  Because the launch was aborted, Plaintiff incurred losses

associated with the delay of future launches and costs to mitigate the impact on Plaintiff's

business and to process the vehicle for the next launch attempt.

Plaintiff notified Defendant of the launch abort and submitted its claim.  Defendant denied

coverage, stating that the launch abort did not prevent immediately impending physical loss or

damage as required by Section Q, and that losses caused by the abort are excluded under the

design defect exclusion because the sensor was faulty.  Plaintiff then brought suit for declaratory

judgment and breach of contract in New York state court.  Defendant later removed the action to

federal court after Plaintiff settled its claims against all other Defendants.

## II.    STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed --

but early enough not to delay trial -- a party may move for judgment on the pleadings."  Fed R.

Civ. P. 12(c).  "Both plaintiffs and defendants can move for judgment on the pleadings under

Rule 12(c)."  *Lively*, 6 F.4th at 305.  A plaintiff may file a Rule 12(c) motion to seek "judgment

as a matter of law for the relief requested in the complaint."  *Kondaur Cap. Corp. v. Cajuste*, 849

F. Supp. 2d 363, 366 (E.D.N.Y. 2012); *accord Easy Fin., L.L.C., v. Churchill MRA Funding I,

L.L.C.*, No. 23 Civ. 2948, 2024 WL 4664836, at *11 (S.D.N.Y. Sept. 5, 2024).  Thus, "[w]hen a

plaintiff is the movant, courts must accept all factual allegations in the answer and draw all

reasonable inferences in favor of the defendants, who are the non-movants . . . ."  *Lively*, 6 F.4th

at 305.  Judgment on the pleadings is appropriate only if "the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law."  *Rivera v. Schweiker*, 717 F.2d 719, 722 n.1 (2d Cir. 1983); *accord United States v.

Whittingham*, No. 22-1507, 2024 WL 2104674, at *1 (2d Cir. May 10, 2024) (summary order).

In evaluating a plaintiff's Rule 12(c) motion, "courts may consider all documents that qualify as part of the non-movant's pleading, including (1) the complaint or answer, (2) documents attached to the pleading, (3) documents incorporated by reference in or integral to the pleading, and (4) matters of which the court may take judicial notice." *Lively*, 6 F.4th at 306.

## III.    DISCUSSION

Plaintiff moves for judgment on the pleadings on Defendant's asserted coverage defenses, which allege that there is no coverage because Section Q does not apply and the "design defect" exclusion bars coverage. Plaintiff's motion is denied because both defenses may apply.

### a. Choice of Law

Colorado or Florida law applies to this case. A federal court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022). As the Policy contains no choice of law provision, the first step under New York law is to determine "whether there is an actual conflict of laws on the issues presented." *Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011); *accord Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 256 (S.D.N.Y. 2020). If a conflict exists, New York law requires the Court to apply "the center of gravity" approach, "pursuant to which the court applies the law of the place which has the most significant contacts with the matter in dispute." *RLI Ins. Co. v. AST Eng'g Corp.*, Nos. 20-214-CV, 20-596-CV, 2022 WL 107599, at *2 (2d Cir. Jan. 12, 2022) (summary order). In insurance actions, "courts in New York generally apply the law of the jurisdiction which the parties understood was to be the principal location of the insured risk unless with respect to the particular issue, some other jurisdiction has a more significant relationship." *Id.* "Where the

policy covers risks in two or more states, the state of the insured's domicile should be regarded as a proxy for the principal location of the insured risk." *Id.*

Here, Plaintiff's principal place of business is Colorado. The alleged loss occurred in Florida. The parties largely agree that either Colorado or Florida law should apply to this case, and the parties' briefs discuss cases applying both Colorado and Florida law. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is sufficient to establish the applicable choice of law . . . ."); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (implied consent to application of New York law where the parties' briefs "assume" that it controlled). The analysis below considers both Florida and Colorado law, given the parties' implied consent and the fact that the applicable law from each state does not "provide[] different substantive rules." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (applying New York choice of law rules); *accord Cotiviti, Inc.*, 501 F. Supp. 3d at 256. Defendant also argues for the application of Rhode Island law, as Defendant is domiciled in Rhode Island. Although Rhode Island law does not substantively conflict with Colorado and Florida law, it is not to be considered because Defendant has not shown that its domicile has a more significant relationship to the events than the location of the loss or Plaintiff's domicile.

Insurance contracts are "subject to the general rules of contract interpretation." *Am. Fam. Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 120 (Colo. 2016); *see also Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) ("In interpreting insurance contracts, this Court follows the generally accepted rules of construction . . . ."). Under Colorado and Florida law, interpretation of an unambiguous contract is a matter of law for the court. *Antero Res. Corp. v. Airport Land Partners, Ltd.*, 526 P.3d 204, 211 (Colo. 2023); *Washington Nat. Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013); *accord People's Tr. Ins. Co. v. Banks*, 388 So. 3d 862, 865 (Fla.

Dist. Ct. App. 2023). A contract is ambiguous if it has more than one reasonable interpretation. *Am. Fam. Mut. Ins. Co.*, 375 P.3d at 120; *Penzer*, 29 So. 3d at 1005; *accord Pial Holdings, Ltd. v. Riverfront Plaza, L.L.C.*, 379 So. 3d 547, 551 (Fla. Dist. Ct. App. 2024). If a contract is unambiguous, it should be interpreted without resort to extrinsic evidence. *Am. Fam. Mut. Ins. Co.*, 375 P.3d at 117; *Washington Nat. Ins. Corp.*, 117 So. 3d at 952.

Courts look to the contract as a whole to understand whether a term is ambiguous in its relevant context. *Univ. of Denver v. Doe*, 547 P.3d 1129, 1140 (Colo. 2024); *Washington Nat. Ins. Corp.*, 117 So. 3d at 948 ("Courts should avoid simply concentrating on certain limited provisions to the exclusion of the totality of others."). A court's focus "when interpreting a contract is to determine and effectuate the parties' intent and reasonable expectations at the time the contract was made." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Crestone Peak Res. Operating L.L.C.*, 538 P.3d 745, 750 (Colo. 2023); *Sanislo v. Give Kids the World, Inc.*, 157 So. 3d 256, 270 (Fla. 2015) ("[T]he courts' basic objective in interpreting a contract is to give effect to the parties' intent"). That intent is to be determined "by first looking to the plain language of the [contract] and, so long as it is unambiguous and would not result in an absurdity, we give effect to the contract as written." *Bd. of Cnty. Comm'rs of Boulder Cnty.*, 538 P.3d at 750; *Sanislo*, 157 So. 3d at 270 (looking to "the particular language used against the background of other indicia of the parties' intention" to determine intent).

**b. Applicability of Section Q**

The Policy language contained in Section Q limiting coverage to events "due to immediately impending insured physical loss or damage" applies both to launch holds and to launch aborts. Therefore, the Policy covers the launch abort here only if it was due to immediately impending insured physical loss or damage. Plaintiff is denied judgment on the

pleadings because coverage depends on the reason for the sensor error, which caused launch abort, and these facts are not yet established.

Section Q of the policy includes the limitation that, "In the event that a launch is aborted or subject to a day of launch hold due to immediately impending insured physical loss or damage, this Policy shall pay the reasonable and necessary incremental costs associated with the launch abort or day of launch hold . . . ." The limiting language -- "due to immediately impending insured physical loss or damage" -- unambiguously restricts coverage for both a launch abort and a day of launch hold. Plaintiff's interpretation would have coverage attach regardless of the cause of an aborted launch. That interpretation is unreasonable and implausible given the policy as a whole and its stated overarching purpose to insure against physical loss or damage, and in certain limited instances to cover the cost of preventing immediately impending physical loss or damage.

The overarching purpose of the Policy is to insure against physical loss or damage. The Preamble states: "This Policy covers property . . . against all risks of PHYSICAL LOSS OR DAMAGE . . . ." Section 6 in the Additional Coverages Section, which contains the rocket launch coverage provision, states: "This Policy includes the following Additional Coverages for insured physical loss or damage."

In certain instances, the Policy covers not only actual loss or damage but also the cost of preventing "immediately impending insured physical loss or damage." The Cyber Additional Coverage for Data Restoration includes the cost of "actions to temporarily protect and preserve insured electronic data, programs or software" either (1) "*due to actual insured physical loss or damage* to electronic data, programs or software" or (2) "*against immediately impending insured physical loss or damage* to electronic data, programs or software." (Emphasis added). Similarly,

the Additional Coverage for Protection and Preservation of Property includes costs "to temporarily protect or preserve insured property[,] provided such actions are necessary _due to actual, or to prevent immediately impending, insured physical loss or damage_." (Emphasis added). The Cyber Time Element Coverage Extension for Owned Network Interruption contains similar language, as does the Protection and Preservation of Property Time Element.

Section Q likewise provides coverage for costs associated with preventing "immediately impending insured physical loss or damage." No actual physical loss or damage is contemplated here as in the other provisions because the launch abort or launch hold would have prevented it.

Plaintiff's interpretation would extend coverage to costs associated with a launch abort that occurred for any reason. The provision would read, "In the event that a launch is aborted, this Policy shall pay the reasonable and necessary incremental costs associated with the launch abort . . . ." This interpretation is unreasonable and implausible because it is untethered to the fundamental purpose of the policy to insure against physical loss or damage.

Neither the pleadings nor the Policy compels the conclusion that an abort would never occur except to prevent impending loss or damage. Plaintiff makes much of the fact that a launch abort and launch hold are distinct events; the former is automated and occurs in the final seconds of countdown, while the latter is a manual termination, which can occur only before the automated system takes over. Accepting that distinction does not change the analysis because neither the pleadings nor the Policy supports the inference that the only scenario in which a launch abort can occur is due to immediately impending insured physical loss or damage. Section Q of the Policy contains two definitions of "abort." The first is "terminated ignition as defined by the relevant contract." The "relevant contract" is undefined, but given the term's earlier use in the same section, the "relevant contract" likely refers to Plaintiff's contracts with its

customers, whose terms are neither in the Policy nor the pleadings.  The second definition of "abort" similarly does not limit a launch abort to the avoidance of immediately impending physical loss or damage, but simply states "the termination of ignition by the launch control equipment."

Plaintiff argues that the last antecedent rule requires that the modifier, "due to immediately impending insured physical loss or damage," applies only to "subject to a day of launch hold" and not to "is aborted."  However, resorting to interpretive canons or rules of grammatical construction is generally appropriate only when the contract language is ambiguous. *Miller v. Kase*, 789 So. 2d 1095, 1098 (Fla. Dist. Ct. App. 2001); *accord Andean Life, L.L.C. v. Barry Callebaut U.S.A. L.L.C.*, No. 20 Civ. 20765, 2021 WL 9563176, at *6 (S.D. Fla. Sept. 29, 2021); *see Fuel Automation Station, L.L.C. v. Energera Inc.*, 119 F.4th 1214, 1231 n.17 (10th Cir. 2024) (Colorado law) ("We are uncertain whether Colorado would apply the last-antecedent rule *before* finding a contract provision ambiguous."); *id*. at 1231 ("Under [the last antecedent] rule, a phrase modifies and limits only the immediately preceding phrase and not previous phrases, *unless the language and context show the parties' intent otherwise.*") (emphasis added and omitted).  As explained above, the language of the contract is unambiguous, so reliance on canons of interpretation is unnecessary.  Regardless, application of the last antecedent rule would be inappropriate here because the modifier is intended to apply to both abort and hold, and "the doctrine cannot be applied in a way that ignores the plain reading of the language."  *Penzer*, 29 So. 3d at 1007; *accord Nautilus Ins. Co. v. Pinnacle Eng'g & Dev., Inc.*, No. 22 Civ. 62300, 2024 WL 940527, at *11 (S.D. Fla. Mar. 5, 2024); *Chandler-McPhail v. Duffey*, 194 P.3d 434, 440 (Colo. App. 2008) (holding that the last antecedent rule applies only "in the absence of a contrary intention"); *accord Fuel Automation Station*, 119 F.4th at 1231.

Plaintiff relatedly argues that the use of the disjunctive "or" with "determiner words" breaks the parallelism between "abort" and "hold," which supports its reading that the modifying phrase is connected only to "hold." This argument misinterprets the language. The provision states in relevant part that, "In the event that a launch is aborted or subject to a day of launch hold due to immediately impending insured physical loss or damage . . . ." The phrase "subject to a day of" is not a determiner, also known as a limiting adjective.[2] *See* Grammarly, What Are Determiners? Definition and Examples, https://www.grammarly.com/blog/grammar/determiners/#:~:text=A%20determiner%20is%20a%20word,are%20also%20called%20limiting%20adjectives (last visited Nov. 14, 2024). Instead, the full phrase, "subject to a day of launch hold," is needed to create a parallel structure with "aborted." The sentence structure does not support Plaintiff's reading, but rather undermines it by highlighting the parallelism between the two items in the list: either the launch is aborted, or the launch is subject to a day of launch hold, but in both cases, the reason for the change in the launch must be that there was immediately impending insured physical loss or damage.

### c. Design Defect Exclusion

Defendant also disclaims coverage based on a Policy exclusion in paragraph 3.C. Judgment on the pleadings is denied to Plaintiff because the exclusion is unambiguous and, depending on the facts, may preclude coverage.

The exclusion states:

> This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured: 1) faulty workmanship, material, construction or design from any cause . . . . 3) deterioration, depletion, rust, corrosion or erosion, wear and tear, inherent vice or latent defect.

---

[2] A determiner here that would support Plaintiff's interpretation is, "For an aborted launch, or **a** hold due to immediately impending insured physical loss or damage . . . ." The article "a" functions as a determiner.

This provision contains two parts, the exclusion and the exception to the exclusion. The exclusion unambiguously excludes losses due to faulty workmanship, latent defects and other specified risks, which may be relevant here depending on the cause of the incorrect sensor signal. The exception to the exclusion does not apply because it pertains only to certain physical damage, and Plaintiff does not claim any physical damage.

The exception to the exclusion -- "if physical damage not excluded by this Policy results, then only that resulting damage is insured" -- is an "ensuing loss" clause in insurance parlance. *See, e.g.*, 12 Couch on Ins. § 175:117, Types of hazard or risk. "Ensuing loss clauses ensure that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the property insurance policy will remain covered; the uncovered event itself, however, is never covered." 11 Couch on Ins. § 153:2, Basic policy principles, common disputes, rules of construction. The ensuing loss clause is an exception to the exclusion, which in this case would allow coverage for certain physical damage. The scope of the exception is often the subject of litigation and requires careful analysis of whether the claimed physical damage is separate and distinct from the excluded risks. *See, e.g.*, *Balfour Beatty Constr., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 511 (5th Cir. 2020); *Fruchthandler v. Tri-State Consumer Ins. Co.*, 96 N.Y.S.3d 649, 650 (2d Dep't 2019). Such analysis is unnecessary here because the carve out applies only to physical damage, and Plaintiff claims no physical damage at all. However, recognizing the ensuing loss clause for what it is clarifies the structure of the provision as having two parts, each of which stands alone -- (1) the exclusion, which precludes coverage of all of the listed risks regardless of the type of damage and (2) the exception to the exclusion, which permits coverage for certain physical damage.

Plaintiff conflates the two parts of the provision, asserting that the exclusion applies only to losses involving physical damage to property, and that the exclusion has no bearing on non-physical damage. That interpretation is fanciful and at odds with the analysis above and applicable law that similarly recognizes the distinct nature of the exclusion and the ensuing loss exception. For example, in *Swire Pacific Holdings, Inc. v. Zurich Insurance Co.*, the Florida Supreme Court reviewed the law analyzing similar provisions and held that the exclusion applied to losses arising directly from the excluded risk, and the exception would allow coverage only for a separate and subsequent loss. 845 So. 2d 161, 166-68 (Fla. 2003); *see also Rocky Mountain Prestress, L.L.C. v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1261-62 (10th Cir. 2020) (Colorado law); *Rodriguez v. Clear Blue Ins. Co.*, No. 22 Civ. 02455, 2024 WL 2272567, at *7 (M.D. Fla. May 20, 2024), *reconsideration denied*, 2024 WL 3520794, at *1 (M.D. Fla. July 24, 2024) (Florida law).

Plaintiff argues that courts have interpreted similar exclusionary clauses to apply only to physical damage, but Plaintiff misreads those cases. Plaintiff's cited cases are consistent with the interpretation above of provisions that contain both an exclusion and an ensuing loss clause. In *Fruchthandler v. Tri-State Consumer Insurance Co.*, the court addressed the following exclusion: "we do not insure for loss to property . . . caused by any of the following. However, any ensuing loss to property . . . not excluded or excepted in this policy is covered . . . c. Faulty . . . workmanship. . . of part or all of any property, whether on or off residence premises." 96 N.Y.S.3d at 650. The insurance company had relied on the exclusion to deny coverage for a house fire, asserting that the fire had been caused by faulty workmanship related to a junction box. *Id.* Based on the facts of the case, the Court held that there was coverage based on the ensuing loss exception to the faulty workmanship exclusion: "The evidence in the record

12

demonstrated that the fire occurred two years after the alleged faulty workmanship related to the junction box, and caused ensuing loss to property wholly separate from the defective property itself." *Id.* at 651.

Plaintiff's reliance on in *Harbor Communities, L.L.C. v. Landmark American Insurance Co.*, No. 7 Civ. 14336, 2008 WL 2986424, at *5 (S.D. Fla. Aug. 4, 2008), is similarly misplaced. The relevant provision was, "We will not pay for loss or damage caused by or resulting from: . . . Defective materials; faulty workmanship, error, omission or deficiency in designs, plans or specifications. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." *Id.* The court distinguished between the design defect exclusion and the ensuing loss provision. *Id.* at *6. Applying *Swire,* the court held that damages resulting directly from the defect were excluded, while damages collateral or subsequent to damages caused by the defect were covered under the exclusion's carve out. *Id.*

In *Travelers Indemnity Co. v. Board of County Commissioners ex rel. Larimer County*, which Plaintiff also cited, the ensuing loss clause stated that "in the event that an excluded cause of loss [e.g., defective construction,] results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage." 508 F. App'x 733, 734 (10th Cir. 2013) (Colorado law). The court affirmed the trial court's holding that losses directly caused by the defect were excluded and losses due to an intervening causal event were not. *Id.* at 736. After discovery, Plaintiff may be able to show that the alleged losses were not caused by faulty workmanship or another excluded risk, but the exclusion is not categorically inapplicable to the non-physical losses at issue here.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. 30.

Dated:  November 18, 2024
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**